**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CASE NO. 21-CR-736 (JEB)** |
| | : | |
| **MARK ANDREW MAZZA,** | : | |
| | : | **Detention Hearing: 12/28/2021** |
| **Defendant.** | : | |

## MOTION FOR DETETION PENDING TRIAL

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully moves this Court, first, to detain defendant Mark Andrew Mazza (Mazza) pending trial pursuant to 18 U.S.C. §3142.  In support thereof, the government states the following:

## I.    BACKGROUND

On November 17, 2021, defendant Mazza was arrested in the Southern District of Indiana on an arrest warrant issued from the United States District Court for the District of Columbia by Magistrate Judge Zia Faruqui in connection with a Criminal Complaint charging the defendant with the following violations: 18 U.S.C. §1512(c)(2) (Obstruction of a Congressional Proceeding); 18 U.S.C. §1512 (c)(2) (Obstruction of a Grand Jury Proceeding); 18 U.S.C. §§ 1752(a)(1), (2) (4) and (b)(1) (Activity on Restricted Grounds While Armed); 40 U.S.C. § 5104(e)(1)(A)(i), (2)(D) and (F) (Restricted Activity on U.S. Capitol Grounds, including possessing a firearm);  18 U.S.C. § 231(a)(3) (Civil Disorder); 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers or Employees while armed); 22 D.C. Code §4504 (Carrying a Pistol without a License), and 7 D.C. Code §§ 2502.01 (Unregistered Firearm), and 2506.01 (Unregistered Ammunition).  Defendant Mazza was presented in the Southern District of Indiana on November 18, 2021, and the government sought detention pending trial.  The defendant consented to

1

detention pending transport to the District of Columbia and he requested a detention hearing in the District of Columbia.  On or about December 15, 2021, arrived in D.C. area, and on that same date (December 15, 2021), defendant Mazza has been indicted on thirteen counts:

(1) **18 U.S.C. § 231(a)(3) (Civil Disorder)**
(2) **18 U.S.C. §§ 1512(c)(2), 2 (Obstruction of an Official Proceeding-Congressional Proceeding)**
(3) **18 U.S.C. §§ 1512(c)(2) (Obstruction of an Official Proceeding- Grand Jury)**
(4) **18 U.S.C. §§ 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon)**
(5) **18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) (Entering and Remaining in a Restricted Building or Grounds with a Deadly or Dangerous Weapon)**
(6) **18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) (Disorderly and Disruptive Conduct in a Restricted Building or Grounds with a Deadly or Dangerous Weapon)**
(7) **18 U.S.C. §§ 1752(a)(4) and (b)(1) (Engaging in Physical Violence in a Restricted Building or Grounds)**
(8) **40 U.S.C. § 5104(e)(1) (Unlawful Possession of a Firearm on Capitol Grounds or Buildings)**
(9) **40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence in the Capitol Grounds or Buildings)**
(10) **22 D.C. Code §4504(a) (Carrying a Pistol Without a License)**
(11) **7 D.C. Code § 2502.01 (Possession Of Unregistered Firearm)**
(12) **7 D.C. Code, § 2506.01(3) (Unlawful Possession Of Ammunition)**
(13) **22 D.C. Code §§ 3211, 3212(b) (Second Degree Theft)**

If convicted of every charge, the defendant faces a maximum punishment of over 100 years' incarceration.[1]  The Government incorporates by reference the statement of facts supporting the complaint affidavit in this matter as Exhibit 1.

As described in more detail in Exhibit 1, on January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C.  The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by

---

[1] The maximum penalty for each violation of 18 U.S.C. §1512(c)(2) is 20 years (2 counts); § 1752 (a) and (b) is 10 years (3 counts); 40 U.S.C. § 5104(e)(1)(A)(i) is 5 years (1 count); 40 U.S.C. §§5104(e)(2) is 1 year (1 counts); 18 U.S.C. §111(a) and (b) is 20 years (1 count); 18 U.S.C. §231 is 5 years (1 count); 22 D.C. Code § 4504 is 5 years (1 count); 7 D.C. Code § 25002.01 and 2506.01 is one year (2 counts) and 22 D.C. Code §§ 3211 3212(b) is 180 days (1 count).

U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session

of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be have been captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.  Since January 6, 2021, there has been an active federal investigation into the events surrounding the Capitol Riots.  That investigation has gathered a significant amount of evidence and data, including data identifying electronic devices and cellular telephones in use around the U.S. Capitol on January 6, 2021.  A federal grand jury investigation in the District of Columbia was also initiated shortly thereafter in January 2021.

*The Defendant's Conduct at the United States Capitol*

As described in greater detail in Exhibit 1, defendant Mazza crossed state lines from Indiana into the District of Columbia to attend the Stop the Steal Rally in Washington, D.C., while armed with a Taurus Revolver, which is a .45 caliber revolver that uniquely can shoot both shotgun shells and regular cartridges.  Mazza loaded his Taurus Revolver both with shotgun shells and cartridges containing hollow point bullets, which are bullets that expand on contact and are significantly more lethal than regular bullets.  After first attending the rally at the Ellipse on January 6, 2021, Mazza came to the U.S. Capitol with the Taurus Revolver, and entered onto restricted U.S. Capitol Grounds where a Secret Service protectee was presiding over the U.S. Congress.  Mazza had no authorization or permission to carry the firearm into protected space.  At approximately 2:30 p.m., Mazza dropped or abandoned his firearm in the steps leading up to the West Front Terrace on the U.S. Capitol during a likely assault on a U.S. Capitol Police Sergeant

who was defending the Capitol. Mazza then continued up the West Front Terrace to a tunnel that led to a doorway in a crowd of other people that overpowered police and ignored written warnings posted on barriers that clearly stated the area was closed to the public.  From there Mazza went to the Lower West Terrace doorway and into the U.S. Capitol Building pushing against police struggling to prevent the onslaught of people.  Selfie-images from defendant Mazza's social media account from January 6, 2021, show the defendant's clothing an appearance before the riot began:



Video footage from the Lower West Terrace doors at approximately 3:08:29 p.m. shows Mazza entering the tunnel area while using his scarf as a cover over his face.   Images from the video footage include the following image that has been marked with a red circle added to show Mazza's location:



The video further shows defendant Mazza assisting the group of protesters by pushing with others from behind while the group, as a whole, forced their way towards D.C. Metropolitan Police Department Officers (MPD Officers) assisting the U.S. Capitol Police and defending the Lower West Terrance door entrance to the U.S. Capitol.  The MPD Officers were wearing helmets, body armor, and distinctive police attire emblazoned with the words police and "Metropolitan Police Department."  At least 20 MPD Officers were resisting the mob's efforts to gain entry, and were enduring constant attack inside the tunnel at the time of Mazza's presence inside the tunnel area.

Images of Mazza assisting the pushing against officers is in the following images:





Other video footage shows that Mazza continued to the front of the tunnel area with a baton

in his hand, where he was present as he, and others, assaulted the MPD Officers who were

defending the inside of the Lower West Terrace doors at approximately 3:13:30 p.m. The

video shows Mazza behind one of the glass doors, and he is seen holding the glass doors

open for other protesters with his right hand while clenching a black baton in his hand. As

he held open the glass door, other rioters assaulted the MPD Officers who were defending

the tunnel entrance and resisting the protestors. In one video, Exhibit 2, "*UNBELIEVABLE*

*Footage: Trump Supporters Battle Cops Inside the Capitol*, uploaded January 7, 2021,

located at https://www.youtube.com/watch?v=cJOgGsC0G9U ("Unbelievable Video")-

time stamp of approximately 16:45 to 29:00 are when Mazza is inside the tunnel area, the

actions of the rioters can be more clearly seen.[2]   Mazza is seen at this same moment while

he is holding the glass door open as rioters used shields, flag poles, and batons as weapons

to strike at and force their way through the MPD officers.   During this period, dozens and

dozens of law enforcement officers are assaulted in the tunnel area, including MPD Officer

Daniel Hodges whose head was caught between the two doors and assaulted by the rioters,

including having his eyes were gouged out (at time stamp 20:00-22:00).   *See Testimony of*

*USCP Sgt. Gonell, MPD Officer Fanone, USCP Officer Dunn, and MPD Officer Hodges*:

Hearing Before the House Select Comm. to Investigate the January 6th Attack on the United

States Capitol, 117  Cong. (July 27, 2021) (Statement of Officer Hodges) available at

https://www.c-span.org/video/?513434-1/capitol-dc-police-testify-january-6-attack.

Images from Exhibit 2 showing Mazza aiding and abetting the assaults include:



---

[2] The Unbelievable Video captures much of the time that Mazza was inside the tunnel area.

Mazza's hand is shown below holding open the door as other rioters pushed forward to assault multiple MPD Officers:



Additional BWC footage from another DC metropolitan Police Officer revealed Mazza actively swinging the baton at police officers at approximately 3:15:45 p.m.



At approximately 3:13:58 p.m., Mazza is also observed and recorded on multiple videos as yelling at the officers, "This is our fucking house! We own this house! We want our house!" Images from one of the videos is as follows:





Shortly thereafter, Mazza is seen moving from the front of the tunnel, where he had committed and witnessed violence against the MPD Officers, to the back of the tunnel area. There Mazza showed other rioters his baton and pulled other rioters into the tunnel area to attack and push against the MPD Officers at the front of the tunnel, as many of the rioters yelled "heave-ho!" These "heave-ho" efforts - by which multiple rioters collectively used their body mass for greater force in pushing back officers by gaining momentum through leaning back and then pushing forward while chanting "heave-ho" to coordinate their efforts - resulted in significant physical force and pressure being placed upon the MPD Officers at the front of the tunnel. While engaged in the "heave-ho" efforts, Mazza was armed with the baton. An image from the video that shows Mazza displaying the expandable baton for other rioters is below.



Images showing Mazza pulling people into the tunnel area to assist it in the assault on MPD Officers shortly thereafter include the following:





Images of the video showing Mazza pushing with the group yelling "heave-ho" while armed with a baton include the following:



After leaving the U.S. Capitol sometime thereafter, defendant Mazza drove home with a friend.  On January 8, 2021, defendant Mazza, while in Indiana, filed a false police report alleging that his firearm was stolen in the state of Ohio, with the Shelbyville Police Department (SPD) in Indiana.  Mazza made the initial report on January 8, 2021 by telephone.  On January 13, 2021, he

later called the SPD back to provide the serial number for his Taurus Revolver (to complete the police report).  This false stolen gun report was communicated to the United States Bureau of Alcohol, Tobacco and Firearms ("ATF") in the District of Columbia, and conveyed to the U.S. Capitol Police.  This false report obstructed the law enforcement and grand jury investigation into this matter and required law enforcement to expend significant additional time energy and resources to try and identify Mazza's true role and location during the assault on January 6, 2021.

In a consensual interview with U.S. Capitol Police agents on March 25, 2021, Mazza admitted that he attended the Stop the Steal rally, and that he came onto the U.S. Capitol with the loaded Taurus Revolver.  Mazza stated that he lost his firearm while in a crowd of people who were involved in violence against law enforcement inside the tunnel area on the West Front entrance to the U.S. Capitol at a time Mazza said was approximately 3:15 p.m.  Mazza also claimed that he observed violence against officers, but that he was a peacemaker who did not commit any acts of violence against any law enforcement officers.  Mazza also claimed to have helped one of the officers who got dragged into the crowd after he left the tunnel rea.  Further investigation demonstrated that Mazza falsely denied assaulting any law enforcement officers and he was also was not truthful with where and how he lost the firearm.  Specifically, Mazza claimed he lost the firearm inside a tunnel on the West Front of the U.S. Capitol leading to a doorway at around 3:15 p.m., but in reality the weapon was recovered by CW-1, a U.S. Capitol Police Sergeant, who was assaulted by a person who had the firearm in their possession, at approximately 2:30 pm.  These false statements again obstructed the criminal and grand jury investigation and required law enforcement to expend significant additional resources and manpower.  Further investigation suggests that after defendant Mazza was pushed from the tunnel area at approximately 3:20 PM,

he was in close physical proximity to Officer Michael Fanone, and appears to be making space for Officer Fanone against other rioters who were assaulting him.

After defendant Mazza was arrested on November 17, 2021, a search warrant was effectuated on his home and Mazza agreed to be questioned after being advised of his Miranda rights.  In Mazza's home was found a baton issued by the Metropolitan Police Department, a hat, jacket and clothing matching Mazza's clothing worn on January 6, 2021, a gun holster, 2 pellet guns, and over 1,000 rounds of ammunition to various firearms (including 7.62mm, .45 long, shotgun shells and what appears to be .50 caliber ammunition), as well as magazines for several other firearms (including AR-15 style banana clips and other semi-automatic magaznies) which were not recovered in the home.  The defendant also had over a dozen hunting knives and swords strewn around his home.  In his statement to law enforcement after his arrest, Mazza admitted to taking the police baton on January 6, 2021 from the U.S. Capitol and to using it to strike a law enforcement officer in the tunnel.  Mazza further admitted that he was recently in possession of several other firearms, but that had recently given his other firearms to his brother because he was concerned he might be arrested.  He also indicated he had the knives around his home for self-protection.

## **APPLICABLE LAW**

The Government has requested a pretrial detention hearing under several provisions of the Bail Reform Act, 18 U.S.C. § 3142(f)(1), which provides that a judicial officer shall, upon motion of the attorney for the government, "hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such person as required and the safety of any other person and the community." Specifically, this case involves three bases for detention, as the evidence demonstrates Mazza:

(1) Committed "a crime of violence . . . for which maximum term of imprisonment of 10 years or more is prescribed . . . ." *Id.* at § 3142(f)(1)(A).

(2) Committed "any felony . . . that involves the possession or use of a firearm." *Id.* § 3142(f)(1)(E); and

(3)  is "a serious risk that such person will obstruct or attempt to obstruct justice . . . ." *Id.* at § 3142(f)(2)(B).

The first basis exists because the defendant has been charged with two crimes of violence: 18 U.S.C. § 111(a)(1) and (b) for forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with a person designated in 18 U.S.C. § 1114 (which includes certain federal officers or employees or those assisting them) where such acts involve physical contact with the victim of that assault, while the officer or employee is engaged in or on account of the performance of official duties, while using a deadly or dangerous weapon, that being a baton,[3] and 18 U.S.C. §1752(a)(4) and (b)(1)(A), for committing physical violence against any person in restricted buildings and grounds while armed with deadly or dangerous weapon.  These offenses are crime of violence, *see* 18 U.S.C. § 3156(a)(4)(A) (defining a crime of violence as "an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another"), and the maximum penalty for the §111 and §1752 offenses are 20 years' and 10 years' incarceration, respectively.  *See* 18 U.S.C. §111(b) and 1752(b)(1)(A).

The second basis further exists as the defendant has been charged with violations of 18 U.S.C. §§ 1752(a)(1) and (b)(1)(A) and 18 U.S.C. §§ 1752(a)(2) and (b)(1)(A) with use of a firearm, and for unlawfully possessing a firearm on the grounds of the U.S. Capitol under 40

---

[3] *See, e.g., United States v. Caldwell*, 2021 WL 236667 at *5 (D.D.C. May 21, 2021) (confirming violations of 18 U.S.C. §111(a) and (b) are crimes of violence subject to detention under the Bail Reform Act, and that offenses involving dangerous weapons are similarly detention eligible).

U.S.C. § 5104(e)(1)(A)(i).  The defendant is also charged with violations of 22 D.C. Code §4504

(Carrying a Pistol without a License Outside Home or Business),[4] which is also considered a

dangerous crime under the D.C. Code, *see* 23 D.C. Code §1331(3)(A), and a separate basis for a

hold in the District of Columbia.  23 D.C. Code §1332 (b)(1)(A) (detention hearing must be held

in a case involving, "a crime of violence or a dangerous crime, as these terms are defined by §

23-1331").

   The third basis is also applicable as the defendant is charged with obstructing the grand

jury investigation in this matter pursuant to 18 U.S.C. § 1512(c)(2) based upon his filing of a false

police report in which he claimed that his Taurus Revolver was stolen in Ohio after the attack on

January 6, 2021, and his false statements to Special Agents of the U.S. Capitol Police about his

own conduct at the Capitol and how he actually lost the firearm at the U.S. Capitol.

   In making a pretrial detention decision, by statute the Court must consider four factors:  1)

the nature and circumstances of the offense charged, including whether the offense involves such

things as a firearm; 2) the weight of the evidence against the person; 3) the history and

characteristics of the person; and 4) the nature and seriousness of the danger to any person or the

community that would be posed by the person's release.  18 U.S.C. § 3142(g). The Government

may proceed by way of proffer, *see United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996),

and will do so in this case.

   **Analysis of Factors for Detention**

   Here, the first factor -- the nature and circumstances of the offense charged -- weighs

---

[4] The U.S. Attorney for the District of Columbia is empowered to jointly charge D.C. Code and federal code offenses in the same case in the District of Columbia. *See* 84 Stat. 477, Pub. L. 91-358, title I, § 111 (*codified at* 11 D.C. Code § 502 (3)); *United States v. Kemper*, 648 F.2d 1354, 1350 (D.C. Cir. 1980) (finding statute is "unequivocal" when charges are joined in same indictment).

strongly in favor of detention.  As attested in the Affidavit, on January 6, 2021, the defendant came

into the District of Columbia to attend a large gathering with thousands of people with a loaded

and unlawful firearm that was loaded with shotgun shells and hollow point bullets.  The defendant

then proceeded into restricted space of the U.S. Capitol with that same firearm, with hundreds of

other persons where the Vice-President (a Secret Service protectee) was presiding over a Joint

Session of Congress to certify the Electoral College vote as memorialized in the Article II, Section

1 of the Constitution of the United States, and the 12th Amendment thereto.  After dropping his

loaded Taurus gun at approximately 2:30 p.m. at the foot of the steps of West Front Terrace to the

U.S. Capitol during a likely assault on a U.S. Capitol Police Sergeant, the defendant continued

toward the Capitol in a crowd undeterred.  Mazza and attempted to make violent entry into the

entranceway to the U.S. Capitol located further up on the West Front Terrace while armed with

another weapon, a collapsible baton, through a tunnel that was guarded by numerous law

enforcement officers.  The defendant's effort to enter into the U.S. Capitol was clearly calculated

to disrupt the Congressional proceeding mandated under Article II, and inside the tunnel, defendant

Mazza yelled at the law enforcement officers to get out of their way to enter the U.S. Capitol

Building, including: "This is our fucking house! We own this house! We want our house!"  Inside

the tunnel, the defendant was captured on video cameras as he held the collapsible baton and struck

at law enforcement officers with the baton.  At the entranceway to the U.S. Capitol, the defendant

further assisted other persons who were attacking the officers with other weapons by holding open

the door entrance while those other persons attacked the officers with weapons.  The defendant

continued his violence against the officers by pulling in multiple other people from the crowd into

the tunnel area and by participating in a heave-ho effort to physically push their way through the

law enforcement officers.

When interviewed after the fact in March 2021, the defendant was unrepentant. He claimed he was a "patriot, and it pisses me off to see where we're at." When asked if he would change anything, he indicated that he had hoped that he would have seen Speaker of the House Nancy Pelosi, and stated, "Never did get to talk to Nancy… I thought Nan and I would hit it off." Mazza continued, "I was glad I didn't because you'd be here for another reason and I told my kids that if they show up, I'm surrendering, nope they can have me, because I may go down as a hero."

As discussed above, before attending the riot, the defendant had armed himself with a firearm loaded with hollow point bullets and shotgun shells capable of causing serious injury, and his comments about Speaker Pelosi suggest he intended to commit serious bodily harm to the Speaker of the House of Representatives of the United States Congress.

Courts who have reviewed detention decisions in the Capitol Riot cases have affirmed the view that while detention is not required in every case involving a person charged on January 6, 2021, "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). Chief Judge Beryl Howell of the D.C. District Court has identified a six-factor inquiry in the Capitol Riot cases to weigh:

> "The comparative culpability of a given defendant in relation to fellow rioters": (1) whether the defendant has been charged with felony or misdemeanor offenses; (2) the extent of the defendant's prior planning, "for example, by obtaining weapons or tactical gear"; (3) whether the defendant used or carried a dangerous weapon; (4) evidence of coordination with other protesters before, during, or after the riot; (5) whether the defendant played a leadership role in the events of January 6, 2021; and (6) the defendant's "words and movements during the riot"—*e.g.*, whether the defendant "remained only on the grounds surrounding the Capitol" or stormed into the Capitol interior, or whether the defendant "injured, attempted to injure, or threatened to injure others."

*United States v. Caldwell*, 2021 WL 236667 at \*5 (D.D.C. May 21, 2021) (*quoting United States v. Chrestman*, 2021 WL 765662, at \*7-8 (D.D.C. Feb. 26, 2021) (Howell, C.J.)).

Each of these factors confirms that defendant Mazza is highly dangerous and deserving of detention.  The defendant has been charged with nine felonies and faces a maximum statutory punishment of over 100 years' incarceration.  The defendant brought a unique and unregistered firearm to the U.S. Capitol where Vice President Pence was then presiding.  That firearm was in holster and was loaded with hollow point bullets and shotgun shells rendering it even more dangerous than an ordinary pistol of its kind.  After losing the firearm, the defendant was undeterred.  He thereafter obtained a large collapsible baton (which was taken from the Metropolitan Police Department) for use against the law enforcement officers guarding the door to the U.S. Capitol building.  The defendant further assisted other rioters in their assault on law enforcement officers at the front of the tunnel area, and after being removed from the doorway area, the defendant encouraged other persons from the crowd to join into the effort and push in the heave-ho effort to physically dislodge the officers.  The defendant also used words confirming his intent to obstruct the Congressional Proceeding required under Article II of the U.S. Constitution. He did not stop with words, however. Mazza attempted to injure officers protecting the Capitol during that constitutional vote using a baton and the force of the crowd after he lost his firearm during his contact with a police sergeant.

Other factors support Mazza's detention, including his choice of ammunition (shotgun shells and cartridges with hallow point bullets), and his deliberate obstruction of the grand jury and federal investigation by filing a false police reports days after the riot, that his firearm had been stolen in Ohio, when in fact he lost it at the U.S. Capitol.  Further he made false statements to law enforcement about how he really lost the firearm, and whether he was involved in any

violence against law enforcement officers at the U.S. Capitol.

The second factor, the weight of the evidence, also favors a Mazza's detention. The defendant's violent actions against law enforcement while armed has been located on multiple videos of the incident. These videos confirm his violence and his possession of the collapsible baton. The defendant has admitted that he was present at the riot at the U.S. Capitol while armed with a firearm, and that he filed a false police report. He has also since admitted to assaulting an officer with the baton, and for taking the baton from the U.S. Capitol. Video from the defendant's own social media accounts also confirm that he was present and took video of the Capitol Riot in real time, thereby displaying his efforts to thwart a constitutional process through force across social media. A search of the defendant's home further confirms that clothing matching that which he wore on January 6, 2021 was recovered.

The third factor, defendant's history and characteristics, also weighs in favor of detention, though less strongly. The defendant has lied to local and federal law enforcement officers after January 6, 2021, and thus there exists substantial reason to believe that his word to the Court cannot be trusted. The defendant has a recent criminal assaultive history, that is a recent assault conviction on November 10, 2021 (from a September 2021 case) for misdemeanor Battery in Shelbyville, Indiana. The defendant is not presently employed, nor does it appear that he has had stable employment for some time. In March, 2021, the defendant informed law enforcement officers that he still possesses firearms in his home, but when he was arrested in November, he indicated he had given those weapons to his brother. Instead, the government found over 1,000 rounds of ammunition of various calibers in the defendant's home. The government understands that the defendant has also served in the military and was discharged on a limited disability. These factors together confirm the government's view that detention is necessary in this case.

The fourth factor, that is the nature and seriousness of the danger to any person or the community posed by the defendant's release, also weighs in favor of detention.  As discussed above, the defendant engaged in hostile and sustained attacks against law enforcement while armed with firearm, and then, a baton.  He lost the firearm but persisted in his attack on the U.S. Capitol and law enforcement officers.  Some 45 minutes later, he then assaulted officers with a baton, and helped others assault the officers with weapons.  After he was repulsed from inside the doorway area, he came back and persisted by bringing in additional bodies into the tunnel area and engaging in more violence against the officers in the doorway who were holding off the attackers' efforts to forcibly disrupt the Congressional proceeding.  As the defendant in the *Caldwell* case, here the defendant Mazza's conduct on January 6, 2021, "evinces a clear disregard of others – and law enforcement in particular."  The defendant used weapons against police officers clad in riot gear, he brought his own loaded weapon to the riot, and he rushed to the front of the crowd in the tunnel to directly confront law enforcement officers whom he could see had also been assaulted by numerous other rioters.  *Id.* at *10.  The defendant has also recently been convicted of battery this year.  Here, the evidence for danger to the community is heighted because the defendant engaged in willful and intentional obstruction of justice of the investigation by filing a false police report and lying to U.S. Capitol Police agents.  His danger to the community is thus increased because this Court can have no confidence that he would abide by any release conditions.

Taken together, the defendant's actions in this case – repeatedly assaulting riot-clad police officers as part of a violent mob, in order to prevent Congress from certifying the 2020 election – demonstrate his lack of regard for the Constitution, the law, and police authority, and demonstrate that he poses a risk of danger to the community.  The fact that Defendant brought a handgun loaded with hollow point bullets and shotgun shells to the riots demonstrates a level of planning that goes

beyond mere spontaneity and demonstrate his danger.  If that were not enough, Defendant's lies to local and federal law enforcement after the riots further demonstrate that his is highly unlikely to obey any conditions of release that the Court might set.

Moreover, Defendant has no known ties to the District of Columbia and is self-employed. He now faces a significant term of imprisonment in the face of overwhelming evidence against him.  Government counsel is aware that in similar cases from January 6, 2021 which involved assaults on law enforcement officers with batons, the calculation of the U.S. Sentencing Guidelines (U.S.S.G. §2A2.2) for just the violation of 18 U.S.C. §§ 111(a) and (b) offenses is a level 26 offense (four level enhancement under §2A2,2(b)(2)(B), a two level enhancement under §2A2.2(b)(7), a six level enhancement under § 3A1.2(b) and (c)(1)), which for a person with zero criminal history points, is a prison only guideline range of  63 to 78 months.  Given the strength of the government's case, all of this gives him a compelling incentive to flee or further obstruct justice.

**WHEREFORE**, the United States respectfully prays this Honorable Court to detain the defendant without bond pending trial.

Respectfully submitted,

By: _____*/s/ Tejpal S. Chawla*
TEJPAL S. CHAWLA
Assistant United States Attorney
D.C. Bar 464012
555 4th Street, N.W.
Washington, D.C. 20530
202-252-7280 (Chawla)
Tejpal.Chawla@usdoj.gov